**Opinion issued March 24, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00658-CR

_____

**SAUL RANCIER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 84493-CR**

---

## MEMORANDUM OPINION

Saul Rancier appeals his conviction for aggravated assault with a deadly weapon. *See* TEX. PENAL CODE § 22.02. He pleaded guilty, and after a punishment hearing, the trial court sentenced him to 20 years' imprisonment. He moved for a

new trial based on ineffective assistance of counsel at the sentencing hearing. After a hearing, the trial court denied the motion.

On appeal, Rancier argues that the trial court erred in denying his motion for new trial because his trial counsel was ineffective for failing to call witnesses to testify at the sentencing hearing. We affirm.

## Background

Rancier pleaded guilty without an agreed punishment recommendation. Evidence at the punishment hearing established that in 2017, Rancier and some coworkers celebrated his promotion at his long-time employer by going to two bars. They stayed at the second bar for several hours. When they left, a group of four men followed them out of the bar and confronted Rancier and his friends, then went back inside the bar. Rancier saw his friends off and went to his car.

A second group of men surrounded Rancier at his car. The trial court viewed a video of the rest of the interaction. Rancier got a pistol from his car and put it in his pocket. Another man approached the group and began arguing with Rancier about a mutual acquaintance. The man testified at sentencing that he was agitated and confrontational as he approached Rancier. The man and Rancier exchanged some curse words, and then the man turned to walk away. When the man turned around, Rancier heard him say something about a gun. Believing that the man was reaching for his weapon, Rancier shot him six times. Bystanders tackled Rancier

and began hitting him in the face to disarm him, and Rancier was badly beaten. The police arrived at the scene and arrested him.

The evidence at the sentencing hearing included a presentence investigation report ("PSI"). Rancier had been released on bond without issue for seven years after his arrest. The PSI included Rancier's letter to the court explaining his regret and requesting leniency along with favorable letters from three coworkers recounting Rancier's integrity and kindness, his willingness to help others, and his pride in his family.

Additionally, the court admitted two other letters into evidence. Coworker Jorge Roman's letter describes Rancier as honest and hardworking. Roman says that on the night in question, he and Rancier were provoked and harassed, and Roman asks for leniency so that Rancier can raise his daughters. Rancier's ex-wife also wrote a letter stating that they had amicably separated after 20 years and that they co-parent three daughters. His ex-wife described him as reliable and dependable and a responsible partner and father.

Rancier testified at the sentencing hearing, and, by agreement with the State, Rancier's youngest daughter testified without cross-examination by reading her letter of support to the court.

In closing argument, the State requested an 18-year sentence, and Rancier's counsel argued for 10 years' community supervision. At the conclusion of the

hearing, the trial court sentenced Rancier to the maximum punishment of 20 years' imprisonment.

Rancier moved for a new trial. In his motion, he argued that his trial counsel failed to investigate and present mitigating evidence at the sentencing hearing. He also argued that his counsel was ineffective for failing to appropriately counsel him on the effects of his guilty plea. He argued that he was unaware he had the right to a jury trial or that a jury could have recommended he be placed on probation. After a hearing, in which both Rancier and trial counsel testified, the trial court denied the motion.

Rancier appealed.

## Denial of Motion for New Trial

On appeal, Rancier argues that the trial court abused its discretion in denying his motion for new trial. He argues that the motion should have been granted because he was denied effective assistance of counsel when his counsel failed to call witnesses to testify at the sentencing hearing and instead submitted letters from them to the court. The State responds that the trial court did not abuse its discretion because Rancier did not meet his burden to show that his trial counsel performed below objective standards of reasonableness and that, but for that performance, the outcome of the proceeding would have been different. We agree with the State.

4

## A. Standard of Review

Because Rancier raised his ineffective assistance claim in a denied motion for new trial, we analyze the claim on appeal as a challenge to the trial court's ruling on that motion, and we review the ruling for an abuse of discretion. *Caballero v. State*, 695 S.W.3d 467, 481 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd). We will reverse the trial court's ruling only if the decision to deny the motion for new trial was arbitrary or unreasonable, viewing the evidence in the light most favorable to the ruling. *Id.*

We defer to the trial court's decision to believe or disbelieve all or any part of a witness's testimony. *Id.* (explaining trial courts are better positioned than appellate courts to evaluate witness credibility and to resolve conflicts in evidence). "If there are two permissible views of the evidence, the trial court's choice between them cannot be held to be clearly erroneous." *Id.* A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* (citing *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007)).

When, as here, the trial court makes no findings of fact on the denial of a motion for new trial, we impute implicit factual findings that support the trial judge's ultimate ruling. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

To prevail on an ineffective assistance claim, an appellant must show that (1) his counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The *Strickland* standard applies to ineffectiveness claims regarding trial counsel's performance at both the guilt-innocence and the punishment stages of trial. *Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999). An appellant must satisfy both prongs of the *Strickland* test by a preponderance of the evidence; failure to demonstrate either deficient performance or prejudice will defeat a claim of ineffectiveness. *See Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Under the second *Strickland* prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 894 (quoting *Strickland*, 466 U.S. at 694). An appellant must show more than "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* (quoting *Strickland*, 466 U.S. at 693).

### B.   Analysis

Rancier argues that his trial counsel was ineffective for failing to call witnesses to testify live at his sentencing hearing. "The decision whether to present

witnesses is largely a matter of trial strategy." *Lopez v. State*, 462 S.W.3d 180, 185 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (internal quotation and citation omitted). An attorney's decision not to present particular witnesses at the punishment stage "may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful to the defendant." *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007).

At the hearing on the motion for new trial, Monte Toussant and Charles Finch, two of Rancier's coworkers who wrote letters for Rancier testified that their testimony at the sentencing hearing would have been like the letters they provided the court. Jorge Roman, another coworker who wrote a letter, testified that he had additional testimony he could have provided beyond his letter because he was present the night of the shooting. The record reflects that Roman also gave a statement to the police.

Trial counsel testified at the hearing on the motion for new trial. He stated that he chose to submit written letters from supportive individuals rather than have them testify as live witnesses. He thought the contents of the letters, together with the video of the events leading up to the shooting, were sufficient to argue for leniency.

He said he met and spoke with family members, and he discussed with Rancier whether to have his daughter testify. Given Rancier's daughter's young age, counsel spoke to the State and got an agreement to have her read the letter rather than be subject to cross-examination. Counsel thought the letter was "moving" but that live testimony may have been "a bit much" and could potentially be viewed in a negative light. Rancier's trial counsel testified that he spoke with Roman "many, many times" and that the video showed that although Roman may have been at the bar that evening, none of Rancier's coworkers were with Rancier at the time of the shooting.

Counsel testified that live testimony is not always better than written testimony. He explained that he did not call some witnesses to testify, such as Rancier's ex-wife, because he was concerned that doing so would subject her to cross-examination that could be unfavorable. Counsel testified that in hindsight, after Rancier received the maximum sentence, he would have called more live witnesses to testify.

The evidence supports factual findings that trial counsel's decisions regarding live and written testimony at sentencing were based on sound trial strategy. The trial court could have reasonably believed counsel's testimony that he was concerned for cross-examination and the effect of some live testimony. Trial counsel stated that he considered whether to call live witnesses and decided to have

Rancier's young daughter read her letter and submit the rest of the support by letter to the court.

The record supports the trial court's determination that appellant's representation did not fall below an objective standard of reasonableness based on prevailing professional norms. *See Carter v. State*, 506 S.W.3d 529, 540–41 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (stating that "[h]ere, defense counsel made a reasoned, strategic choice to limit the character witnesses to the two that he thought would be more persuasive to the judge and to avoid having several witnesses testifying to essentially the same information"). Rancier did not meet his burden to overcome the first prong of the *Strickland* test. *See Strickland*, 466 U.S. at 669.

Moreover, even if his counsel's performance had been deficient, Rancier could not establish the second prong of *Strickland*, but for his counsel's performance, there is a reasonable probability that the result of the proceeding would have been different. *Perez*, 310 S.W.3d at 893. Rancier argues that this case is akin to *Milburn v. State*, a case in which an appellate court held defense counsel's unreasonable failure to present any mitigating evidence at the sentencing hearing was prejudicial, amounting to ineffective assistance of counsel. *Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). At the motion for new trial hearing, defendant's counsel admitted that he neither

investigated nor evaluated the punishment evidence, and the court held that the defendant demonstrated prejudice because his counsel's failure to present any mitigating evidence deprived the appellant of the possibility of bringing out even a single mitigating factor. *Id.* at 271. In contrast here, Rancier's counsel procured positive letters from employers, friends, and family. These statements, and a statement from Rancier himself were included in the punishment evidence.

Rancier also has not established that testimony by live witnesses would have differed from the statements they provided to the court. A defendant complaining about trial counsel's failure to call witnesses "must show the witnesses were available and that he would have benefited from their testimony." *Robinson v. State*, 514 S.W.3d 816, 824 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (internal quotation and citation removed). The witnesses at the hearing on the motion for new trial each testified that their live testimony at the sentencing hearing would have been similar to their written letters.

Rancier has not met his burden to establish the second prong of the *Strickland* test. The trial court did not abuse its discretion in denying Rancier's motion for new trial. We overrule this issue.

## Conclusion

We affirm the trial court's judgment.

Susanna Dokupil
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).

11